UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

MARY JO ANN HAMMOND,

        **Plaintiff,**

  v.                                   Civil Action 2:20-cv-5562
                                        Chief Judge Algenon L. Marbley
                                        Magistrate Judge Chelsey M. Vascura

COMMISSIONER OF SOCIAL
SECURITY,

        **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Mary Jo Ann Hammond ("Plaintiff"), brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for Social Security Period of Disability benefits and Disability Insurance benefits. This matter is before the Court on Plaintiff's Statement of Errors (ECF No. 13), the Commissioner's Memorandum in Opposition (ECF No. 14), and the administrative record (ECF No. 12). For the reasons that follow, it is **RECOMMENDED** that Plaintiff's Statement of Errors be **OVERRULED** and that the Commissioner's decision be **AFFIRMED**.

          **I.**      **BACKGROUND**

Plaintiff filed her application for Title II Period of Disability and Disability Insurance Benefits on December 14, 2017, alleging, after amendment, that she became disabled effective March 1, 2017. (R. 172, 193.) On November 1, 2019, following administrative denials of Plaintiff's applications initially and on reconsideration, a video hearing was held before Administrative Law Judge Noceeba Southern (the "ALJ"). (*Id.* 42–82.) Plaintiff, represented by counsel, appeared and testified. Vocational expert Hermona Cozella Robinson (the "VE") also

appeared and testified at the hearing. On November 22, 2019, the ALJ issued a decision denying benefits. (*Id.* at 15–37.) On August 19, 2020, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision. (R. 1–3.) Plaintiff then timely commenced the instant action. (ECF No. 1.)

In her Statement of Errors (ECF No. 13), Plaintiff asserts two contentions of error: (1) the ALJ's residual functional capacity is not supported by substantial evidence because it fails to account for Plaintiff's impairments of her upper extremities and her migraine headaches; and (2) the ALJ improperly failed to recognize Plaintiff's urinary incontinence as a medically determinable impairment. (*Id.* at 5–11.)

## II. THE ALJ'S DECISION

On November 22, 2019, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (R. 15–37.) At step one of the sequential evaluation process,[1] the ALJ found that Plaintiff had not engaged in substantial gainful activity

---

[1] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

since her alleged disability onset date of March 1, 2017. (*Id.* at 17.) At step two, the ALJ found that Plaintiff has the severe impairments of degenerative changes of the cervical spine, right shoulder degenerative joint disease, and hypertension. (*Id.*) She further found at step three that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 29.)

At step four of the sequential process, the ALJ set forth Plaintiff's residual functional capacity ("RFC")[2] as follows:

> After careful consideration of the entire record, it is determined that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b). She must alternate between sitting and standing every 60 minutes for 2 to 3 minutes at a time, but can remain on task while doing so. Climbing ramps and stairs, and handling and reaching in all directions with the upper extremities, are each limited to no more than frequently. Crawling, crouching, kneeling, and stooping, are each limited to no more than occasionally. She cannot climb ladders, ropes, and scaffolds, and must avoid all exposure to workplace hazards.

(*Id.* at 30.)

At step five of the sequential process, relying on the VE's testimony, the ALJ found that Plaintiff could perform past relevant work as a customer service representative as actually and generally performed. (*Id.* at 35.) The ALJ therefore concluded that Plaintiff was not disabled under the Social Security Act. (*Id.* at 36.)

### III. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to

---

[2] A claimant's RFC is an assessment of "the most [she] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1).

proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).

Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007).

## IV.     ANALYSIS

As set forth above, Plaintiff asserts two contentions of error: (1) the ALJ's residual functional capacity is not supported by substantial evidence because it fails to account for Plaintiff's impairments of her upper extremities and her migraine headaches; and (2) the ALJ improperly failed to recognize Plaintiff's urinary incontinence as a medically determinable

impairment. (Pl.'s Statement of Errors 5–11, ECF No. 13.) The undersigned considers each contention of error in turn.

**A.      The ALJ's residual functional capacity is supported by substantial evidence.**

The determination of a claimant's RFC is an issue reserved to the Commissioner. 20 C.F.R. §§ 404.1527(e), 416.927(e). Nevertheless, substantial evidence must support the Commissioner's RFC finding. *Berry v. Astrue*, No. 1:09-cv-411, 2010 WL 3730983, at *8 (S.D. Ohio June 18, 2010). The Social Security Act and agency regulations require an ALJ to determine a claimant's RFC based on the evidence as a whole. 42 U.S.C. §§ 423(d)(5)(B), 1382c(a)(3)(H)(i) (incorporating § 423(d) for Title XVI). Consistently, Social Security Ruling 96-8p instructs that the ALJ's RFC assessment must be based on all of the relevant evidence in the case record, including factors such as medical history, medical signs and laboratory findings, the effects of treatment, daily activities, lay evidence, recorded observations, medical source statements, effects of symptoms, and evidence from attempts to work. SSR 96-8P, 1996 WL 374184 (July 2, 1996). An ALJ must explain how the evidence supports the limitations that he or she sets forth in the claimant's RFC:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (*e.g.*, laboratory findings) and nonmedical evidence (*e.g.*, daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (*i.e.*, 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

*Id.* at *7 (internal footnote omitted).

Here, Plaintiff contends that the ALJ's RFC fails to adequately address Plaintiff's upper extremity limitations. (Pl.'s Statement of Errors 5–7, ECF No. 13.) The ALJ concluded that

Plaintiff could perform "light" work as defined by 20 CFR § 404.1567(b), which "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds," except that she could handle and reach in all directions no more than frequently. (R. 30.) Plaintiff contends that the evidence demonstrates that she cannot perform the lifting, carrying, grasping, and handling requirements of "light" work.

      The undersigned finds that the ALJ's RFC with respect to Plaintiff's upper extremity limitations is supported by substantial evidence. The ALJ noted that Plaintiff had received epidural injections for neck pain, alleged episodic issues with her left upper extremity, and alleged right shoulder pain with documented decreased strength for which she received injections. (R. 31.) However, the ALJ also noted that Plaintiff "repeatedly had full and normal range of motion and strength of her upper extremities, including her shoulders, with no clonus, numbness, tingling, and weakness, and negative and normal Hawkins, Kennedy, Neer, O'Brien, and Sulcus sign and test results." (R. 32, citing treatment notes from Fairfield Health Professionals Orthopedics by Jon Pearlman, M.D., and Michael Martin, M.D., at R. 424, 427–28, 430, 433–34, 436–37, 439, 525, 536, 540, 560, 576, 579, 582, 589, 595, 610, 829, 887, 919, 927; and treatment notes Fairfield Health Professionals Rheumatology by Irving Rosenberg, M.D., at R. 548.) The ALJ further relied on the opinions of state agency reviewing physicians, Leon Hughes, M.D., and Lynne Torello, M.D., who opined that Plaintiff could perform light exertional work, but could never climb ladders, ropes, or scaffolds; occasionally stooping, kneeling, crouching, and crawling; and frequently climb ramps/stairs; and should avoid all exposure to hazards. (R. 33–34, citing R. 92–94, 106–08.) Notably, the ALJ's RFC was even more restrictive than that opined by the state agency reviewers, in that the ALJ also limited Plaintiff to no more than frequent handling and reaching in all directions with the upper extremities. (R.

6

30.) Finally, the ALJ noted that Plaintiff reported engaging in various tasks requiring the use of her upper extremities, such as sewing and caring for chickens. (R. 32, citing a psychological evaluation by John Reece, Psy.D., at R. 519.) These treatment notes, state agency reviewer opinions, and Plaintiff's self-reported activities all constitute substantial evidence on which the ALJ could rely to conclude that no further limitations were warranted in connection with Plaintiff's upper extremities. *See* 20 C.F.R. §§ 404.1529(c)(2) (objective medical evidence is to be considered in evaluating symptoms, including pain); 404.1513a(b) (ALJs are required to consider findings by state agency medical consultants). And although Plaintiff cites other record evidence that may have supported a more limited RFC, "[a]s long as substantial evidence supports the Commissioner's decision, we must defer to it, even if there is substantial evidence in the record that would have supported an opposite conclusion." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004).

Plaintiff also contends that the ALJ's RFC fails to account for the debilitating impact of her migraine headaches. (Pl.'s Statement of Errors 8–9, ECF No. 13.) The ALJ found that Plaintiff's headaches were a medically determinable impairment, but concluded they "have no more than minimal effect individually or in combination on her ability to work and result in no functional limitations and restrictions as of the amended alleged onset date of disability." (R. 18.) Specifically, the ALJ noted that Plaintiff's headaches "are repeatedly noted as well controlled and not intractable." (R. 18, citing treatment notes from Fairfield Health Professionals Orthopedics by Michael Martin, M.D., at R. 452, 538, 542, 591, 612.)

Plaintiff asserts that her headaches warrant greater restrictions, relying on her own testimony and self-reports to her medical providers. (Pl.'s Statement of Errors 8, ECF No. 13.) But "an ALJ is not required to accept a claimant's subjective complaints." *Jones v. Comm'r of*

7

*Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003). Further, Plaintiff identifies no objective medical evidence that her headaches limit her functioning in any way, and her hearing testimony that she has several migraines a week that each last for half a day (R. 56–57) is inconsistent with her treatment records indicating that her headaches are well-controlled. The most she can point to is a diagnosis of migraine headaches based on her self-reports. (*See* treatment notes from Fairfield Health Professionals Orthopedics by Michael Martin, M.D., at R. 452, 538, 542, 591, 612.) Yet, as the Commissioner correctly points out, "[t]he mere diagnosis . . ., of course, says nothing about the severity of the condition." *Higgs v. Bowen,* 880 F.2d 860, 863 (6th Cir. 1988). Accordingly, the undersigned finds no error by the ALJ in not including further limitations in the RFC as a result of Plaintiff's migraine headaches.

**B.     The ALJ did not err in not finding Plaintiff's urinary incontinence to be a medically determinable impairment.**

Plaintiff asserts that the ALJ erred by failing to consider her urinary incontinence as a medically determinable impairment when crafting Plaintiff's RFC. At step two of the sequential evaluation process, Plaintiff bears the burden of proving the existence of a severe, medically determinable impairment that meets the twelve-month durational requirement. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003); *Harley v. Comm'r of Soc. Sec.*, 485 F. App'x 802, 803 (6th Cir. 2012). The United States Court of Appeals for the Sixth Circuit has construed a claimant's burden at step two as "a *de minimis* hurdle in the disability determination process." *Higgs*, 880 F.2d at 862. The inquiry is therefore "employed as an administrative convenience to screen out claims that are 'totally groundless' solely from a medical standpoint." *Id*. at 863 (quoting *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 90 n.1 (6th Cir. 1985)).

8

However, where the ALJ determines that a claimant has at least one severe impairment at step two of the analysis, "the question of whether the ALJ characterized any other alleged impairment as severe or not severe is of little consequence." *Pompa v. Comm'r of Soc. Sec.*, 73 F. App'x 801, 803 (6th Cir. 2003). Instead, the pertinent inquiry is whether the ALJ considered the "limiting effects of all [claimant's] impairment(s), even those that are not severe, in determining [the claimant's] residual functional capacity." 20 C.F.R. § 404.1545(e); *Pompa*, 73 F. App'x at 803 (rejecting the claimant's argument that the ALJ erred by finding that a number of her impairments were not severe where the ALJ determined that claimant had at least one severe impairment and considered all of the claimant's impairments in the RFC assessment); *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987) (same).

Here, Plaintiff argues that not only did the ALJ fail to find that her urinary incontinence was a severe impairment, the ALJ also failed to find that her urinary incontinence was a medically determinable impairment at all, and therefore did not consider the limiting effects of Plaintiff's urinary incontinence in crafting the RFC. (Pl.'s Statement of Errors 9–11, ECF No. 13.) However, the ALJ noted that Plaintiff "repeatedly had negative . . . genitourinary examination results." (R. 19, citing R. 546, 559, 616, 622.) Moreover, at the hearing, Plaintiff testified that her incontinence was "not that serious" and that she did not require the use of adult diapers. (R. 68.) The ALJ's conclusion that Plaintiff's urinary incontinence was not a medically determinable impairment was therefore supported by substantial evidence.

The record citations relied on by Plaintiff do not change this outcome. Similar to her migraine headaches, Plaintiff cites the diagnosis of stress incontinence in the record (*e.g.*, R. 435), but again, the mere diagnosis of a condition says nothing about its severity. *See Higgs*, 880 F.2d at 863. Plaintiff's only evidence that her incontinence impairs her functioning is her own

9

testimony, asserting that her incontinence would require "more times in the restroom than 15-minute breaks on a regular schedule would allow for." (R. 68.) But again, the ALJ was not required to accept this testimony, especially in the absence of any objective medical evidence to that effect. *See Jones*, 336 F.3d at 476. Accordingly, the undersigned finds no error by the ALJ in not recognizing Plaintiff's urinary incontinence as a medically determinable impairment.

## V. DISPOSITION

In sum, from a review of the record as a whole, the Court concludes that substantial evidence supports the ALJ's decision denying benefits. For the foregoing reasons, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner of Social Security's decision.

## PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A Judge of this Court shall make a *de novo* determination of those portions of the Report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE